# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3543 | **DATE** | 2/13/2003 |
| **CASE TITLE** | Rosalind Crenshaw vs. Jo Anne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due __ ___. |
| (3) | ☐ | Answer brief to motion due_ ____. Reply to answer brief due__ ____. |
| (4) | ☐ | Ruling/Hearing on ____ set for ____ at _ ___. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on __ ___ set for _____ at ___ __. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on __ ___ set for _____ at ___ _. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at ___ __. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to __ ___ at _____ _. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] Enter Memorandum Opinion and Order. Both motions for summary judgment are denied. (12-1) Because the ALJ failed to address an important aspect of the evidence in her decision, it cannot be said that substantial evidence supported her denial of benefits as a matter of law, nor can the opposite result prevail as a matter of law. Hence Crenshaw's alternative request for a remand must be and is granted. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 18 2003 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| ✓ | Mail AO 450 form. | | 6-4. | 21 |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| | | 'SN | date mailed notice | |
| | SN | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

FEB 1 8 2003

ROSALIND CRENSHAW,               )
SS#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,                  )
                                 )
                Plaintiff,       )
                                 )
        v.                       )   No.  02 C 3543
                                 )
JO ANNE B. BARNHART, Commissioner, )
Social Security Administration,  )
                                 )
                Defendant.       )

<u>MEMORANDUM OPINION AND ORDER</u>

Rosalind Crenshaw ("Crenshaw") seeks judicial review

pursuant to the Social Security Act ("Act"),[1] more specifically

Sections 405(g) and 1383(c)(3), of the final decision of

Commissioner of Social Security Jo Anne Barnhart ("Commissioner")

denying Crenshaw's claim for supplemental security income ("SSI")

disability benefits.  Both sides have moved for summary judgment

under Fed. R. Civ. P. ("Rule") 56, and Crenshaw has alternatively

moved to remand for further proceedings.  For the reasons stated

in this memorandum opinion and order, both parties' Rule 56

motions for summary judgment are denied, but Crenshaw's

alternative motion to remand is granted.

---

[1]All further statutory references will take the form
"Section --," using the Title 42 numbering rather than the Act's
internal numbering.  All portions of 20 C.F.R. will be cited
"Reg. § --."  Finally, citations to Crenshaw's and Commissioner's
respective memoranda take the form "Cr. Mem. --" and "Comm. Mem.
--."



## Procedural Background[2]

On November 4, 1998 Crenshaw filed an application for SSI disability benefits due to her high blood pressure, diabetes, depression, stress, arthritis and back pain (R. 145, 152). That application was denied both initially and on reconsideration (R. 112-15, 118-20). Crenshaw then requested and received a hearing (the "Hearing"), which took place before Administrative Law Judge ("ALJ") Cynthia M. Bretthauer on December 1, 1999 (R. 24).

On February 22, 2000 ALJ Bretthauer issued a decision denying Crenshaw's request for disability benefits (R. 13). That denial was based on the ALJ's finding that although Crenshaw was incapable of performing her past relevant work due to the limitations caused by her impairments, she was able to perform a significant number of jobs in the economy and was therefore not disabled (R. 68-69).

Crenshaw's timely request for review before the Appeals Council was denied on March 28, 2002 (R. 7-8). On July 29, 2002 Crenshaw filed this action pursuant to Section 405(g).

## General Background

Crenshaw, born on December 10, 1946 (R. 145), was 53 years old at the time of ALJ Bretthauer's decision. She is 5'4" tall and weighs 223 pounds (R. 300). She left school between the

---

[2] What follows in the next sections of the text is drawn from the administrative record (cited "R. --").

eighth and tenth grade and has not obtained her GED (R. 86, 221, 33). Crenshaw's only past work experience was as a paid hospice care worker for her son from August 1997 until October 1997, when he died of AIDS (R. 221). Although she never married, Crenshaw had five children, three of whom have died since 1993, and she cares for four of her grandchildren in her home (R. 220).

Crenshaw's initial application for disability benefits asserted that her medical conditions prevented her from working. Specifically she reported that she had difficulty with her hands due to her arthritis and that at times her feet were so swollen that she could not stand (R. 152). Crenshaw's February 5, 1999 request for reconsideration reiterated her impairments, emphasizing that she had considerable back pain and also suffered from depression (R. 164-65).

## Medical Evidence

Numerous physicians who evaluated Crenshaw's physical and psychological condition created documentation that was submitted for ALJ Bretthauer's consideration. Given the nature of that evidence and the ALJ's ultimate decision, a detailed review is in order.

Crenshaw was seen on several occasions in 1998 and 1999 by Dr. Lilia De Leon at the HealthFirst treatment center (R. 205-14, 238-49, 264-73). Records from those visits indicate that her serum glucose level was elevated (R. 208, 214, 240) and that she

was prescribed medication for her hypertension, diabetes and pain (R. 206).

On December 11, 1998 Dr. Margaret Stronska performed an internal medical evaluation of Crenshaw (R. 186-88). At that session Crenshaw related to Dr. Stronska that she had suffered from hypertension for ten years and diabetes mellitus for five years but did not have complications from those conditions (R. 186). Crenshaw said that for five years she had experienced back pain that arose on walking more than two blocks or on standing more than ten minutes (id.). Lung, cardiac, abdominal, vascular and neurological examinations revealed no problems (R. 187). During that examination Dr. Stronska observed that Crenshaw had a normal range of motion in both upper and lower extremities and that her bilateral hand grip and fine and gross manipulations were normal. Crenshaw was able to do tandem walking, heel walking, toe walking and squatting, and she could walk with a normal gait without assistance for more than 50 feet (id.). Although Crenshaw had some limited spinal flexion, her extension was normal. Spinal x-rays taken that day showed mild degenerative changes (R. 189). Dr. Stronska concluded that Crenshaw's hypertension and diabetes mellitus were well controlled by her medication and that her low back pain could be associated with Crenshaw's moderate obesity (R. 188).

On the same day Dr. Mahim Kamakant Vora performed a

4

consultative psychological examination of Crenshaw (R. 183-85). Crenshaw told Dr. Vora that she felt depressed on and off and for up to a few hours at a time (R. 183). She also reported having crying spells, difficulty in sleeping and appetite fluctuations and that she lacked motivation (id.). Describing her daily activities, Crenshaw said that she did cooking, cleaning and all household chores as well as shopping (id.). She sometimes socialized with friends and attended church once a week (id.). Dr. Vora observed that Crenshaw's general appearance was normal but that her affect was depressed and tearful. She performed well on all cognitive functioning tests except for serial sevens (R. 184). Dr. Vora diagnosed major depressive disorder, single episode and dysthymic disorder (R. 185).

In February 1999 Dr. Antoinette Krakowski examined Crenshaw and prepared a psychological report at the request of Crenshaw's representative (R. 217-25). During the examination Crenshaw said that she had been depressed since her father died in 1987 and that her condition had worsened since 1993 with the death of three of her children (R. 224). She told Dr. Krakowski that she spent most days at home reading her Bible when she was not caring for her grandchildren, who helped with the cooking, cleaning and laundry (R. 222). Crenshaw's Weschler Intelligence Scale results placed her in the borderline range of intellectual functioning, and she performed at a low level on academic testing (R. 223).

Other cognitive tests suggested the possibility of an organic impairment (R. 223-24). After administering psychological testing, Dr. Krakowski diagnosed major depression, severe, without psychotic features; "atypical organic disorder (rule out)";[3] and borderline intellectual functioning (R. 225).

Dr Krakowski also prepared a psychiatric review technique assessment and mental residual functional capacity ("RFC") assessment for Crenshaw (R. 226-37). Dr. Krakowski found that Crenshaw met listing 12.04 of Reg. Part 404, Subpt. P, App. 1 for Affective Disorder, with depression characterized by anhedonia, appetite disturbance, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, and difficulty in concentrating or thinking (R. 226, 229). Dr. Krakowski further found that Crenshaw's mental functional capacity was markedly limited for the majority of understanding, memory, concentration, persistence, social interaction and adaptation activities (R. 235-36).

Both initially and on reconsideration, Crenshaw's records were reviewed by non-treating medical consultants who assessed her physical and mental functional capabilities (R. 192-203). In January and again in April 1998 such non-treating physicians

---

[3] This Court has no idea whether that listing in the portion of the psychiatrist's opinion meant that she found Crenshaw did or did not suffer from that disorder--and none of the parties' memoranda has cast any light on the subject.

6

completed a physical residual capacity assessment of Crenshaw's back pain and hypertension, concluding that she was capable of medium work (R. 281). Crenshaw's January 1998 psychological assessment from a non-treater, based on the report from Dr. Vora, noted her deficiencies in concentration and social functioning but identified no significant limitations in her ability to perform the mental aspects of simple tasks (R. 193). That assessment was seconded in March 1998 by psychological consultant Carl Herksmeyer, who reviewed the record including Dr. Krakowski's February 1998 report (R. 250-62). In particular Dr. Herksmeyer found that although Crenshaw suffered from major depression and had borderline intelligence, in his view the record did not support Dr. Krakowski's conclusion that she met the Reg. 12.04 listing (R. 252).

In November 1999 Crenshaw's treating physician Dr. Jagdish Shah completed a physical capacities evaluation (R. 284-90). Although much of that form is illegible, Dr. Shah limited Crenshaw to sedentary work (R. 284). Dr. Shah found that Crenshaw could neither stand nor sit continuously for 6 of 8 hours and that she could lift and carry less than 5 pounds on a frequent basis (R. 288). Dr. Shah did not indicate the basis for his opinion (R. 285).

After the Hearing Crenshaw submitted additional medical records that had been requested by the ALJ. Those documents

7

included the results of diagnostic testing done in late November and December 1999 plus treatment notes from Dr. Shah (R. 108). Results of Doppler (peripheral vascular) testing showed decreased pressure of the right lower extremity that suggested inferior popliteal artery occlusive disease (R. 292-95).[4] Electromyography (EMG)/nerve conduction study (NCS) done on Crenshaw's lower extremities and the corresponding paraspinal muscles showed bilateral lumbosacral radiculopathy, suggestive of spinal stenosis (R. 297).[5] Although progress notes for Crenshaw's treatment by Dr. Shah in late 1999 and early 2000 are also largely illegible, radiculopathy and peripheral vascular disease of the lower limbs were among the medical problems that he listed on January 11, 2000 (R. 300).

### Crenshaw's Hearing Testimony

Crenshaw testified that she could not work because of numbness in her hands and back pain that prevented her from standing for too long at one time (R. 88). Although she had not sought psychological counseling, Crenshaw stated that she felt

---

[4] Inferior popliteal arterial occlusive disease is a condition that results from a narrowing of the artery running along the back of the leg at the level of the knee and below (Stedman's Medical Dictionary ("Stedman's") 144, A20, 1250 (27th ed. 2000)).

[5] Lumbosacral radiculopathy is a disease of the spinal nerve roots along the lower region of the spinal cord (Stedman's at 1034, 1503). Spinal stenosis is a condition that results from a narrowing of the spinal canal (id. at 1695)).

8

depressed about four days a week (R. 93-94, 104). She took her medication for her insulin and hypertension as well as prescription level ibuprofen for her back pain (R. 95-98). Due to pain in her feet and back, Crenshaw said that she could walk less than a block, stand for less for less than 30 minutes, sit for less than an hour, lift less than 5 pounds and grab and hold only light objects (R. 98-99). She described her typical day as taking care of her grandchildren, reading the Bible and just being at home (99-100). She testified that she was able to concentrate on what she was reading when it was quiet in the house (R. 104). Crenshaw's grandchildren and other relatives did most of the housework, although she herself was able to do some light cooking and dishwashing and sometimes made her own bed (R. 101). Crenshaw stated that she went to church every week but was unable to sit without pain through the entire service.

## Vocational Expert's Testimony

Vocational expert Cheryl Hoiseth ("Hoiseth") testified at ALJ Bretthauer's request. In principal part she responded to a series of hypothetical questions posed by the ALJ.

In the first hypothetical ALJ Bretthauer asked Hoiseth to assume (R. 105-06):

an individual who is 52 years old, has the work experience and education of this claimant, and has the following exertional limitations: can sit for six hours, stand and walk for six hours, lift and carry frequently up to 25 pounds, occasionally up to 50 pounds, with no other limitations except is limited to

9

jobs that are simple, routine. Could such a person perform claimant's past work?

Hoiseth testified that such a claimant could not perform Crenshaw's past work, but she could do three other jobs that were classified at a simpler level: bagger (25,000 jobs), hand packager (5,800 jobs) and maid or cleaner (9,200 jobs) (R. 106). When the ALJ added a limitation of no repetitive grasping to the hypothetical, Hoiseth responded that the first two of those three jobs would be ruled out (id.).

Next the ALJ posited that the hypothetical claimant was capable of a light exertion level: "someone who could lift and carry 10 pounds frequently, and 20 pounds occasionally" (id.). Hoiseth responded that available jobs included kitchen helper (3,000 jobs), cleaner (6,100 jobs) and laundry worker (8,000 jobs)(id.). In response to the ALJ's questioning Hoiseth testified that those jobs would remain available if the claimant had limited ability to grasp repetitively or could not use her legs or foot controls for repetitive movements (R. 106-07).

Finally the ALJ added to that hypothetical that the claimant would also have to sit and stand every 45 minutes (R. 107). Hoiseth responded that adding that sit/stand restriction would preclude performance of all of the jobs that she had earlier identified. She concluded that no jobs would be available for that hypothetical claimant because even sedentary jobs would be ruled out by the grasping restrictions (id.).

10

## Standard of Review and Applicable Law

Judicial review of Commissioner's decision, authorized by Section 405(g), requires that her findings of fact must be upheld if they are supported by substantial evidence. Such review is therefore limited to determining (1) whether Commissioner applied the correct legal standards in reaching the decision and (2) whether there is substantial evidence in the record to support the findings (Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000)).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (Kepple v. Massanari, 268 F.3d 513, 516 (7th Cir. 2001), quoting (as always) Richardson v. Perales, 402 U.S. 389, 401 (1971)). In reviewing Commissioner's determination this Court must look at the entire administrative record, but it may not reweigh the evidence, resolve conflicts, decide credibility questions or substitute its own judgment for Commissioner's (Clifford, 227 F.3d at 869). That does not however call for an uncritical rubber-stamping of Commissioner's decision (id.).

To be eligible for benefits, Crenshaw must suffer from a "disability," defined in pertinent part as (Section 423(d)(1)(A)):

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months.
Knight v. Chater, 55 F.3d 309, 313 (7th Cir.1995) (citations
omitted) sets out the customary five-step inquiry prescribed by
Reg. §416.920 to determine whether a claimant is disabled:

> (1) whether the claimant is currently employed;
>
> (2) whether the claimant has a severe impairment;
>
> (3) whether the claimant's impairment meets or
> equals one of the impairments listed by the SSA, see 20
> C.F.R. §404, Subpt. P, App. 1;
>
> (4) whether the claimant can perform her past
> work; and
>
> (5) whether the claimant is capable of performing
> work in the national economy.
>
> If a claimant satisfies steps one, two, and three, she
> will automatically be found disabled. If a claimant
> satisfies steps one and two, but not three, then she
> must satisfy step four. Once step four is satisfied,
> the burden shifts to the SSA to establish that the
> claimant is capable of performing work in the national
> economy.

If a disability determination reaches step five, the ALJ must
discharge Commissioner's burden of proof either by applying the
Medical Vocational Guidelines (the "grid") or through the use of
a vocational expert (Herron v. Shalala, 19 F.3d 329, 336-37 (7th
Cir. 1994)).

### ALJ Bretthauer's Opinion

ALJ Bretthauer reviewed the submitted evidence and found
that while Crenshaw had multiple impairments, including diabetes
with neuropathy, mild degenerative disc disease, obesity,

12

depressive disorder not otherwise specified and borderline intellectual functioning, she was not "disabled" under the prescribed framework. Although those conditions were "severe," the ALJ held that they did not meet or medically equal any of the listed impairments (R. 65).

In light of Crenshaw's impairments, the ALJ found that she was unable to perform her past relevant work but that she retained the capacity to perform a significant range of light work (R. 70). Specifically ALJ Bretthauer found that Crenshaw had the RFC[6] to perform work that did not require "lifting/carrying more than 20 pounds occasionally and 10 pounds frequently; performing repetitive leg movements; grasping repetitively; and understanding, remembering and carrying out other than simple, routine work tasks" (R. 65). Relying on Hoiseth's testimony that such a claimant would be capable of performing a significant number of jobs existing in the economy, the ALJ concluded that Crenshaw was not under a "disability" (R. 70).

In explaining her decision ALJ Bretthauer stated that the

---

[6] RFC denotes what a claimant can still do despite her physical and mental limitations (Hickman v. Apfel, 187 F.3d 683, 689 (7th Cir. 1999); Reg. §416.945(a)). In reaching that determination the ALJ considers the claimant's ability to meet various physical demands, such as lift weights, sit, stand, walk, push and pull among other things (Reg. §416.945(b)). RFC is used to determine the claimant's ability to engage in various levels of work (sedentary, light, medium, heavy or very heavy)(Reg. §416.967).

objective medical evidence in the record provided support for her findings (R. 65). For that support she relied on Dr. Stronska's internal medical examination and the psychiatric evaluation by Dr. Vora. She mentioned that diagnostic results from the Doppler and EMG/NCS tests were "[t]he only significant physical findings" (R. 66). Lastly, she noted the consistent findings of the medical consultants who reviewed the record (R. 66-67).

ALJ Bretthauer found that Crenshaw's assertions as to her limitations were not credible because her daily activities belied her complaints of disabling symptoms and limitations. In addition, Crenshaw's hearing testimony was said to contradict what she had told examining psychiatrists about caring for her grandchildren and her home (R. 66). ALJ Bretthauer also stated that Crenshaw's failure to seek "treatment was not what one would expect from a disabled person" (R. 67). Crenshaw was unable to explain why she had not sought treatment for her depression (R. 68). And the ALJ found that although Crenshaw had complained of back pain for several years, she did not take pain medication and had not sought treatment for her back pain (R. 67).

Although the ALJ noted that a treating physician's medical opinion should be afforded special significance, she found that Dr. Shah's opinion could not be accepted because he provided "no basis for his finding such restrictive limitations" (id.). ALJ Bretthauer noted that Dr. Shah's involvement in Crenshaw's care

was actually quite limited and that there was no evidence that his opinion was grounded in anything other than Crenshaw's subjective account of her impairments (id.).

Finally the ALJ also discredited Dr. Krakowski's opinion of Crenshaw's mental functioning because she "lacked the longitudinal perspective to fully assess this claimant" (id.). ALJ Bretthauer found Dr. Krakowski's assessment to be inconsistent with evidence in the record as a whole. Noting that Crenshaw cared for her grandchildren, took care of the household, regularly went to church and was capable of concentrating well enough to read and understand the Bible, the ALJ concluded that those "functional abilities are simply not consistent with a person who is disabled by depression" (R. 67-68).

## Analysis of the ALJ's Decision

Crenshaw argues that the ALJ's decision was not based on substantial evidence because she (1) failed to address the diagnostic test results in her determination of Crenshaw's RFC, (2) improperly relied on the vocational expert's testimony and (3) did not adequately articulate her reasons for rejecting Dr. Krakowski's opinion. Because ALJ Bretthauer's decision rejected on a purely conclusory basis the evidence of Crenshaw's symptoms that was consistent with the diagnostic test results--her inability to stand or walk on a sustained basis--this action must indeed be remanded for further proceedings.

15

Commissioner is charged by Social Security regulations with making the ultimate determination of disability (Reg. §416.927(e)(2)). But in making that determination an ALJ (whose decision typically becomes that of Commissioner herself) "must minimally articulate [her] reasons for crediting or rejecting evidence of disability" (Scively v. Sullivan, 966 F.2d 1070, 1076 (7th Cir. 1992)) and "build an accurate and logical bridge between the evidence and the result" (Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996)). As Herron, 19 F.3d at 333 (internal citation omitted) teaches:

> Although a written evaluation of each piece of evidence or testimony is not required, neither may the ALJ select and discuss only that evidence that favors his ultimate conclusion.

Finally, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings" (Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)).

In assessing a claimant's RFC an ALJ must consider all of the claimant's symptoms, including pain, that can reasonably be found to be consistent with the available evidence (Reg. §§416.929, 416.945). As already described, ALJ Bretthauer determined that Crenshaw was capable of work at a light level of exertion with no restrictions on her standing or walking (R. 65). But in reaching that determination she simply failed to make any assessment of the testimony and medical evidence that bore on Crenshaw's inability to tolerate standing or walking on a

16

sustained basis. That failure prevents any informed review of the ALJ's decision, thus alone mandating a remand (Smith v. Apfel, 231 F.3d 433, 438 (7th Cir. 2000), citing Herron, 19 F.3d at 334).

Throughout the record Crenshaw repeatedly complained that she was unable to stand or walk for long periods due to her back pain (R. 88, 161, 180, 186). Those complaints were not addressed at all by the ALJ, whose stated reasons for generally discounting Crenshaw's complaints failed to speak to Crenshaw's claim of standing/walking difficulties. Crenshaw's testimony about that problem was not contradicted by her statements elsewhere in the record, nor are her reported daily activities inconsistent with her claimed inability to walk and stand for long periods of time. At least equally problematic, the ALJ's discussion of Crenshaw's asserted lack of treatment for her pain said that she did not take pain medication--but to the contrary, the record shows that Crenshaw had taken prescription level ibuprofen for the last four years (R. 221, 239).

Admittedly most of the objective medical evidence cuts against Crenshaw's contention that she has a limited ability to sit, stand or walk on a sustained basis. Dr. Stronska found that Crenshaw could walk more than 50 feet without an assistive device, and she did not find significant abnormalities in Crenshaw's vascular or musculoskeletal examinations. Crenshaw's

17

December 1998 lumbosacral x-ray showed mild degenerative changes.
Two medical consultants who reviewed the record found that
Crenshaw could perform medium level work, and their completed
assessments stated that she could stand/walk and sit for about 6
hours in an 8 hour work day.

But it is critical to note that _every_ _one_ of the medical
evaluations on which the ALJ relied for her determination
_preceded_ the post-Hearing December 1999 diagnostic tests.  And
thus every hypothetical posed to the vocational expert, other
than the one that produced an answer of Crenshaw's total
nonemployability (and hence her disability), necessarily omitted
any consideration of whether the diagnostic tests buttressed Dr.
Shah's opinion as to Crenshaw's major sit/stand limitation.  Yet
Crenshaw's standing and sitting limitations as found by Dr. Shah
can be symptoms of occlusive arterial disease in her lower right
extremity and bilateral lumbosacral radiculopathy, and those
conditions--accepted by ALJ Bretthauer as "significant physical
findings"--were supported by objective medical evidence:
Crenshaw's diagnostic test results.  All of that being so, the
ALJ was not free to dismiss out of hand Dr. Shah's confirmation
of Crenshaw's standing and walking difficulties without
explaining why the diagnostic test results could not constitute
the objective support that the ALJ said was missing from Dr.
Shah's opinion standing alone (_Herron_, 19 F.3d at 334).

Commissioner's Mem. 8 argues that ALJ Bretthauer's decision restricting Crenshaw to a limited range of light rather than medium work, as recommended by the reviewing medical consultants, suggests that the ALJ did take the diagnostic test results into account. But that argument just demonstrates the problem: It cannot be known on what basis ALJ Bretthauer reached her RFC conclusion, because she failed to articulate her reasoning. Further, Commissioner's attempts to persuade this Court to discredit the tests as inconclusive are misdirected. As already described, a reviewing court's role is a limited one in which "[w]e have no authority to supply a ground for the agency's decision" (O'Connor v. Sullivan, 938 F.2d 70, 73 (7th Cir. 1991)).

It is after all taught by such cases as Smith, 231 F.3d at 437 that it is the ALJ's duty to develop a full and fair record, including the ordering of any added medical evidence necessary to make the disability determination (accord, Clifford, 227 F.3d at 873). Although Luna v. Shalala, 22 F.3d 687, 692 (7th Cir. 1994) explains that courts "generally respect the Secretary's reasoned judgment" on how much evidence is needed to make a disability determination, it remains true that the ALJ's duty may be best served by obtaining some expert medical assessment of how the conditions shown by Crenshaw's diagnostic tests impact her functional abilities.

According to vocational expert Hoiseth, there were no jobs available for a claimant analogous to Crenshaw who had to be allowed to sit and stand every 45 minutes (R. 107). Hence a determination that Crenshaw was unable to stand or walk for sustained periods of time would have had a significant impact on the disability determination. Yet the ALJ'S decision fails to articulate even minimally why she dismissed Crenshaw's claimed standing and walking difficulties, so it is impossible to trace the steps that she took to determine that crucial aspect of Crenshaw's RFC. ALJ Bretthauer's failure to address the evidence related to those symptoms leaves this Court "unable to evaluate and determine whether substantial evidence existed to support the ALJ's finding" (Herron, 19 F.3d at 334).

What has been said up to this point bars judgment as a matter of law in favor of Commissioner. Instead a remand is necessary to see whether or not a full analysis and articulation in the respect that this opinion has found wanting will produce the same conclusion that the ALJ reached. But what of the other side of the coin--the possibility that Crenshaw can prevail at this stage of the dispute? On that score no protracted discussion is needed, for the already discussed uncertainty as to the effect of the diagnostic test results bars Crenshaw from a current victory when reasonable inferences are drawn, as they must be on Crenshaw's Rule 56 motion, in Commissioner's favor.

Those test results also do not demonstrate conclusively that
Crenshaw's RFC prevents her from sustained standing and walking.
That the diagnostic tests were not interpreted in the record by
any physician and were not factored into any medical assessments
of Crenshaw's functioning pose equivalent problems for her effort
to gain judgment as a matter of law. In that respect the need
for further input is underscored by Whitney v. Schweiker, 695
F.2d 784 (7th Cir. 1982):

> [B]ecause an Administrative Law Judge as a rule is not
> a doctor, [she] should avoid commenting on the meaning
> of a test or clinical x-ray when there has been no
> supporting expert testimony.

That then would also appear to call for a remand in response
to Crenshaw's motion as well. But before a definitive conclusion
can be reached in that regard, it is necessary to see whether any
of Crenshaw's remaining arguments proves persuasive.

First Crenshaw contends that ALJ Bretthauer did not properly
rely on vocational expert Hoiseth's testimony in concluding that
Crenshaw could perform a significant number of jobs. Cass v.
Shalala, 8 F.3d 552, 555-56 (7th Cir. 1993), the single case
cited by Crenshaw, does confirm the legal rule that an ALJ must
pose a hypothetical to the vocational expert that fully sets
forth the claimant's medically supported impairments. But as
Commissioner points out, the main thrust of Crenshaw's
contention--that the ALJ should have relied on Hoiseth's
testimony in response to the hypothetical that included the

sit/stand restriction--is really the same argument that has already been discussed here as calling for a remand rather than a pro-Crenshaw decision now.

Crenshaw's remaining (and really the only new) argument on the same subject is that the ALJ should not have relied on Hoiseth's testimony about available light jobs because it was inconsistent with descriptions in the *Dictionary of Occupational Titles* (4th ed. 1991). But whether or not Hoiseth miscategorized some of those jobs, Crenshaw failed to point out the discrepancy at the Hearing and cannot do so now (*Donahue v. Barnhart*, 279 F.3d 441, 447 (7th Cir. 2002)). *Donahue, id.* at 446 established the rule in our Circuit that when such a conflict is not identified at a hearing, "an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the *Dictionary's*."

Lastly Crenshaw contends that ALJ Bretthauer failed to adequately state her reasons for rejecting Dr. Krakowski's opinion of Crenshaw's depression and mental capacity. As the finder of fact an ALJ is required to resolve evidentiary conflicts (*Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)). And that role applies when the ALJ is faced with conflicting medical opinions (*Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996). Reg. §416.927(d) sets out a variety of factors that the ALJ must consider in assessing conflicting medical opinion

evidence, including whether a physician is a treating or examining physician; the length, nature and extent of the treatment relationship; the physician's specialty; and the consistency and supportability of the physician's opinion.

Here the record before the ALJ contained conflicting assessments of Crenshaw's depression and her mental functional capacity. Crenshaw does not dispute the ALJ's authority to resolve those conflicting medical opinions. Instead she argues, without a single case citation for support, that ALJ Bretthauer did not adequately explain her decision because she failed to address the specifics of Dr. Krakowski's report.

In resolving conflicts in medical opinion evidence, the ALJ must minimally articulate the reasons for her decision (Clifford, 227 F.3d at 870). But it also remains true that no written evaluation of every piece of evidence, or in this instance of every finding in an extensive medical report, is required (Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001)).

Here ALJ Bretthauer addressed Dr. Krakowski's opinion thoroughly. At the outset of her decision the ALJ listed Crenshaw's impairments, adopting Dr. Krakowski's medical finding that Crenshaw had "borderline intellectual functioning" (R. 67, 65). Turning explicitly to Dr. Krakowski's report, the ALJ summarized its findings and conclusions and explained her reasons for giving them little weight in substantial detail. Because it

is plain that the ALJ considered this important evidence and explained her reasoning in discounting it, that aspect of her opinion meets the minimum articulation standard.[7]

## Conclusion

In sum, ALJ Bretthauer did not err in relying on the vocational expert's testimony, and she adequately explained her reasons for resolving the conflicting psychiatric opinions in the record. But neither party has demonstrated entitlement to a judgment as a matter of law, because genuine issues of material fact remain regarding the extent to which Crenshaw's impairments limit her ability to function.

Accordingly both motions for summary judgment are denied. Because the ALJ failed to address an important aspect of the evidence in her decision, it cannot be said that substantial evidence supported her denial of benefits as a matter of law, nor can the opposite result prevail as a matter of law. Hence

---

[7] Although this is not argued by Crenshaw, the ALJ's explanation is somewhat troublesome to the extent that she failed to mention expressly the conflicting medical opinions in the record, leaving open the possibility that she improperly substituted her own judgment for a physician's opinion (Clifford, 227 F.3d at 870; Rohan, 98 F.3d at 970). But in those cases the ALJ failed to address relevant evidence and rejected uncontradicted medical opinions, while here the record contained conflicting medical opinions that required resolution (see Dixon, 270 F.3d at 1177-78). Earlier in the ALJ's decision she discussed and accepted Dr. Vora's contradictory opinion of Crenshaw's depression, and although the ALJ's reference to Dr. Vora's finding of a higher level of functioning is somewhat oblique, it suffices to trace her reasoning.

Crenshaw's alternative request for a remand must be and is granted.

Milton I. Shadur
Senior United States District Judge

Date: February 13, 2003